UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ROOSEVELT CADAMEY, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Case No. 4:11CV402 RWS |
| LOCAL 682 TEAMSTERS, et al., | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Plaintiff Roosevelt Cadamey filed this employment discrimination case asserting claims against his former union Defendant Teamsters Local 682. Cadamey asserts that he was terminated from his job because of a dues dispute he had with Local 682. Cadamey asserts a claim against Local 682 under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e, et seq. Cadamey claims that Local 682 discriminated against him based on his race. Cadamey also asserts an unfair labor practice claims against Local 682 under the National Labor Relations Act, 29 U.S.C. § 158(b)(2). Local 682 has moved for summary judgment. Because Cadamey has failed to produce evidence which would support his Title VII claim, I will grant Local 682 summary judgment. Local 682 is also entitled to summary judgment on Cadamey's unfair labor practice claim.

*Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and

identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

Direct evidence of employment discrimination is rare, therefore, most cases rely on circumstantial evidence. In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(Title VII case).

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination. McDonnell Douglas, 411 U.S. at 802; Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994). If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. 411 U.S. at 802. The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture." Id. at 510-11. The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination. Aucutt, 85 F.3d at 1316. A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough

to establish, but does not compel, an inference of intentional discrimination. St. Mary's Honor Center, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times. Id. at 515-16. It is not enough to merely discredit defendant's articulated reason for the adverse employment action. A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination. Id.; see also Huston v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995). To avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse employment decision. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996).

*Background*

Plaintiff Roosevelt Cadamey, an African American, became a member of Defendant Teamsters Local 682 in December 1997. He worked as a truck driver for the Construction Division of Fred Weber, Inc. from April 2001 until January 2010. Local 682 and Fred Weber were, and are, parties to a collective bargaining agreement governing the rights, responsibilities, and duties of the union and the company. [Doc. # 62, Ex. A] The agreement provides that if a union member fails to maintain a membership in good standing, upon written notice from the union to Fred Weber that the member was not in good standing, Fred Weber was obliged to discharge the member. [Id. at 3-4] Local 682 is not a hiring hall and has no authority to make the hiring decisions for the employers of the union's members.

Local 682 members are required to pay monthly union dues. In January of 2007, Gary Cossarini became the President and principal officer of the union. At the time he became President, many union members were not paying their dues in a timely fashion which created a financial hardship for the union. To address this problem, in September 2008, a delinquency

policy went into effect under which a letter was sent to a member whose dues were overdue. The letter stated that if the dues were not paid within the time stated in the letter, the union would seek the termination of the member,s employment with their respective employer. These letters were sent by certified mail, return receipt requested, or hand-delivered to the member.

The policy of the union was that if a member became two months delinquent in his dues, and failed to comply with the dues delinquency letter, a letter was sent to the member's employer stating that the member was not in good standing and requesting that the member's employment be terminated as required by the collective bargaining agreement. Once this letter was sent to the employer, the union would not except a late payment from the member in lieu of termination. Instead, the union would wait until the member had been terminated from employment, then the member was required to pay all delinquent dues and had to sign a dues payment letter. That letter stated that the member had paid his dues but that he was not entitled to return to work for the former employer, the decision to re-hire the member was at the sole discretion of the employer.

From September 2008 through June 2012, 190 termination letters were sent to employers demanding that members be fired for delinquent dues. Each of these letters resulted in the members' termination of employment. As a result of these letters, 138 Caucasian members and 52 African American members were terminated from their employment.

Between 1998 and 2102, Cadamay was suspended numerous times for nonpayment of union dues. From 1999 through April of 2009, Cadamay lived at 7402 Greenport Drive. In April 2009, he moved to another address but maintained ownership of the Greenport address and rented it out to a tenant. Afer moving, Cadamey never provided Local 682 with his new address.[1] During 2009, Cadamey was delinquent in the payment of his union dues for most of

---

[1] Although Cadamey informed his shop steward that he had moved, he did not provide the union with his new address. It was Cadamey's responsibility to provide the union with his

the year. The union sent delinquency letters to the Greenport address. Cadamey's tenant would let Cadamay know that he had mail at that address. Each time he received a notice of delinquency from the union, Cadamey would shortly thereafter pay his dues.

On December 11, 2009, the union sent another delinquency letter to Cadamey at the Greenport address stating that he was delinquent in paying his November 2009 dues and the union would seek his termination if he did not pay his dues by the end of December. [Doc. # 63, Ex. E's Ex. L][2] A person sharing Cadamey's tenant's last name signed a receipt for the letter on December 12, 2009. Cadamay asserts that he never got this letter.

Cadamey was laid off by Fred Weber on December 11, 2009. As of January 7, 2010, Cadamey had not paid his dues for November or December 2009. Cadamey knew he was required to pay his dues each month. Cadamey states that he put a check for his November and December dues in the drop box in front of the union's building on the evening of Friday, January 8, 2010. [Doc. # 63, Ex. E at 55-56]

Gary Cossarini, President of Local 682, testified that on Friday, January 8, 2010, he sent a letter to Fred Weber stating that Cadamey had not paid his monthly dues and that by the terms of the collective bargaining agreement his employment should be terminated. [Doc. # 63, Ex. B, Cossarini Aff. at ¶ 28] Cossarini stated that a copy of the letter was also sent to Cadamey at his Greenport address. Cassarini stated, and Cadamey admits, that the union found Cadamey's check for dues the following Monday, January 11, 2010, in the drop box. [See Doc. # 70, Def.'s Amend. Statement of Undisp. Facts at ¶ 57 and Doc. # 75-1, Pl.'s Resp. at ¶ 57] Also on January 11, 2010, a return receipt for Cassarini's termination letter was signed by a Fred Weber

---

proper address. [Doc. # 63, Ex. G, Aubuchon Dep. at pp. 54 - 59]

[2] The parties assert that the letter also stated that Cadamey was delinquent in his December dues and that he had to make a payment to avoid termination by December 31, 2009. [See Doc. # 70, Def.'s Amend. Statement of Undisp. Facts at ¶ 53 and Doc. # 75-1, Pl.'s Resp. at ¶ 53] I do not find this additional information as part of Ex. L.

employee.

Under the union's dues delinquency policy, Cadamey's check, found on January 11, 2010, was not accepted and was returned to Cadamey because the termination letter had already been issued.

Cadamey returned to work at Fred Weber on January 13, 2010. On January 19, 2010, Kevin Wallis, Cadamey's supervisor at Fred Weber, told Cadamay his employment was being terminated for failing to pay union dues. On the same day, Wallis issued a letter to Cadamey stating he received the union's termination letter and telling Cadamey that his employment was being terminated for failing to pay his dues. Cadamey admits his employment was terminated because "he was delinquent in payment of his union dues for November and December of 2009, was not in good standing with the union and was in violation of the union security clause of the collective bargaining agreement..." [See Doc. # 70, Def.'s Amend. Statement of Undisp. Facts at ¶ 61 and Doc. # 75-1, Pl.'s Resp. at ¶ 61]

On January 22, 2010, Cadamey went to Local 682's union hall and met Cossarini for the first time. Before that date, Cossarini had not met Cadamey and did not know that Cadamey was African American. [Doc. # 63, Ex. B, Cossarini Aff. at ¶ 35] Cadamey paid his delinquent union dues and signed the standard letter acknowledging that although he paid his dues it was up to the employer's discretion whether to rehire Cadamey. Cadamey received a copy of this letter. Cadamey also asked Cossarini to call Fred Weber to advise them that Cadamay had paid his delinquent dues.

Cadamey returned to Fred Weber and asked Wallis for his job back. Cadamey testified that Wallis knew he had become current in his dues but Wallis stated that he had to hear from Cossarini "in order to move forward." [Doc. # 63, Ex. D, Cadamey Dep. at 74, 1-11] Cadamey testified that he does not know if Cossarini called Wallis to tell him that Cadamey had become current with his dues. [Id. at 74, 22-23] Cossarini testified that he believed he called Wallis

shortly after Cadamey asked him to and told Wallis that Cadamey had paid his dues. [Doc. # 63, Ex. F, Cossarini Dep. at 54, 1-15] Wallis testified that he did not recall talking with Cossarini about Cadamey becoming current with his dues but he remembers telling Cossarini after Cadamey was terminated that Fed Weber was not hiring due to bad economic conditions. [Doc. # 63, Ex. I, Wallis Dep. at 28, 3-15]

Cadamey was never rehired by Fred Weber. He became employed by Kienstra Concrete Company as a union driver until he resigned from the union in 2012.

Cadamey sued Local 682 under Title VII, 42 U.S.C. § 2000e et seq., for race discrimination.[3] His complaint alleges that Local 682 sought Cadamey's termination and failed to seek Cadamey's reinstatement after his termination because his is African American. Cadamey also asserts an unfair labor practice in violation of the National Labor Relations Act, 29 U.S.C. § 158(b)(2). Cadamey asserts that Local 682 violated the Act by failing to provide him with adequate notice regarding his delinquent dues, unreasonably refusing Cadamey's tender of his dues before he was terminated, and failing to represent Cadamey in a fair and impartial manner. Local 682 seeks summary judgment on all of Cadamey's claims.

***Discussion***

*Cadamey's claim of Race Discrimination*[4]

Under Title VII it is unlawful for a labor organization to discriminate against an

---

[3] Cadamey also brought a breach of fair representation claim under 29 U.S.C. § 185 which Cadamey concedes is time barred.

[4] Cadamey includes in his Statement of Additional Material Facts the affidavit of union truck driverJames Davis in which Davis states that he heard a business agent of Local 682 make a disparaging remark in 2008 or 2009 about African American members. This remark was not made by Cossarini or in his presence. Nor did it relate to the decision process to issue Cadamey's delinquency or termination notices. At best this is a stray remark and does not support any claim of racial animosity regarding the actions that are at issue in this lawsuit. See Saulsberry v. St. Mary's University of Minnesota, 318 F.3d 862, 867-868 (8th Cir. 2003)(stray remarks do not support discriminatory intent inference in unrelated decision).

individual based on his race. 42 U.S.C. § 2000e-2(c)( it is unlawful for a union to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin. §2000e-2(c)(1)). To establish a prima facie case of race discrimination, Cadamey must establish (1) that he is a member of a protected class, (2) that he was meeting Local 682's legitimate job expectations, (3) that he suffered an adverse employment action, and (4) that similarly situated employees outside the protected class were treated differently. Martinez v. W.W. Grainger, Inc., 664 F.3d 225, 230 (8th Cir. 2011).

Cadamey asserts two grounds for his race discrimination claim: first, that Local 682 sought Cadamey's termination based on his race, and second, that Local 682 failed to seek Cadamey's reinstatement after his termination because of his race.

The undisputed facts establish that when the decision maker, union President Cossarini, issued the termination letter to Fred Weber, he did not know that Cadamey was African American. This fact is fatal to Cadamey's claim regarding the termination letter. Moreover, the undisputed evidence establishes that 190 termination letters have been issued by the union and all of the union members concerned were terminated from their employment just as Cadamey was terminated. The record reveals that 138 of these members were Caucasian and 52 were African American members.

In response, Cadamey provides evidence that two non-minority union members were issued dues delinquency letters when they were three months behind in dues. One letter to Jory Giles is dated December 8, 2009 stating that he was three months behind in his dues and Local 682 may sue him to collect. A notice of termination was sent on February 5, 2010 to Giles employer. But that notice stated Giles had not paid the dues demanded in a delinquency letter dated January 4, 2010. There is no record of that letter or the dues owed on that date.

The other union member, Fred Robertson, was issued a dues delinquency letter dated December 8, 2009 stating he was three months behind in his dues. There is nothing more in the

record about these two members.  To establish his prima facie case of discrimination Cadamey must show that he and these two union members were similarly situated in all relevant respects. Muor v. U.S. Bank Nat. Ass'n, 716 F.3d 1072, 1078 (8th Cir. 2013).  "That is, the employees used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."  Id. (internal quotation omitted).  Cadamey has not presented any evidence that Giles and Robertson were similarly situated to him in all relevant respects.

Cadamey also asserts that three white union members who worked at Fred Weber fell behind in their dues but were not issued dues delinquency letters by Local 682. [See Doc. # 75-1, Pl.'s Resp. to Def.'s Amend. Statement of Undisp. Facts at p. 14 ¶ 20]  Yet none of the evidence cited by Cadamey in support of this fact reveals that they were similarly situated to Cadamey. The record does not indicate how far they were behind on their dues or when they paid the delinquent dues.  The record does indicate that at least two of the three, Jason Turntine and Michael Albright, were not similarly situated because, unlike Cadamey, they both elected to have their dues deducted from their pay checks and their arrearages were the result of not getting a paycheck the week the dues would have been withheld.

Because the undisputed evidence establishes that Cossarini, the decision maker who sent out the termination letter, did not know at the time that Cadamey was African American and because Cadamey has not provided any evidence that similarly situated non-minority members did not get termination letters, Local 682 is entitled to summary judgment on this claim.

Cadamey also asserts that the union discriminated against him because Cossarini failed to call Wallis to let him know that Cadamey was current in his dues.  However, Cadamey has not produced any evidence that Cossarini, or any union officer, contacted an employer of a terminated non-minority member to let the employer know that the member had become current with his dues.  It is undisputed that Cadamey received a copy of the letter on January 22, 2010

that stated that he had paid his dues but that he was not entitled to being rehired, that decision was up to the employer. It is also undisputed that Cadamey did not provide this letter to Wallis at Fred Weber. Moreover, Cadamey states that Wallis knew that Cadamey had become current with his dues. [Doc. # 63, Ex. D, Cadamey Dep. at 74, 1-11] Cadamey has failed to produce any evidence that Local 682 treated similarly situated non-minority members differently than Cadamey after they were terminated from a job and then paid their dues. As a result, Local 682 is entitled to summary judgment on this claim.

*Unfair Labor Practice Claim*

Cadamey asserts that Local 682 violated the section 8(b)(2) of the National Labor Relations Act, 29 U.S.C. § 158(b)(2) by failing to provide him with adequate notice regarding his delinquent dues, unreasonably refusing Cadamey's tender of his dues before he was terminated, and failing to represent Cadamey in a fair and impartial manner regarding the dues issue. As this claim is brought under § 158(b)(2), the sum of Cadamey's claim is that the union violated its duty to deal with Cadamey fairly by seeking his discharge for failing to pay his union dues. Section 158(b)(2) states that:

> It shall be an unfair labor practice for a labor organization or its agents--
> (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated **on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership**.

29 U.S.C. § 158(b)(2)(emphasis added). The ultimate basis of Cadamey's claim is that his termination of employment from Fred Weber was caused by the union's action after he failed to pay his union dues. A union's actions based on a member's failure to pay union dues is

specifically excluded by the Act as the basis for an unfair labor practice claim. As a result, Local 682 is entitled to summary judgment on this claim.

Moreover, the applicable statute of limitations for an unfair labor practice charge against a union is six months. DelCostello v. International Broth. of Teamsters, 462 U.S. 151, 172 (1983). Such a cause of action arises when a plaintiff discovers the conduct which gives rise to his claim. Livingstone v. Schnuck Market, Inc., 950 F.2d 579, 583 (8th Cir. 1991). Cadamey asserts that his claim was first capable of ascertainment on March 25, 2010, the date he filed his discrimination charge with the Equal Employment Opportunity Commission. Cadamay first asserted this claim in his amended complaint filed on September 19, 2012, more than six months from the date he was aware of the conduct which forms the basis of his claim. As a result, his unfair labor practice claim is time barred.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant Teamsters Local 682's amended motion for summary judgment [# 69] is **GRANTED**.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 15th day of October, 2013.